UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY,<br><br>               Plaintiff,<br>     v.<br>NORTH BAY WATERPROOFING, INC., et al.,<br><br>               Defendants. | Case No. 14-cv-04056-RMW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>**Re: Dkt. No. 20** |

On October 20, 2014, the court entered default against defendant Douglas Ross Construction ("DRC"), Dkt. No. 16, and on November 25, 2014 against defendant North Bay Waterproofing, Inc. ("North Bay"), Dkt. No. 19. Plaintiff Atain Specialty Insurance Company moves for entry of default judgment against both defendants. Dkt. No. 20. On January 30, 2015 the court held a hearing on this motion. For the reasons set forth below, the court GRANTS plaintiff's motion for default judgment.

## I. Background

Atain filed this action to obtain a judicial declaration that Atain is not obligated to defend or indemnify DRC and North Bay against claims asserted in an underlying action pending in Santa Clara Superior Court. *See* Dkt. No. 1; *see also* Dkt. No. 20, at 2–3. The claims against North Bay and DRC arose out of the construction of a residential apartment complex in San Jose, California.

*Id.* Irvine, the plaintiff in the underlying action—*The Irvine Company, LLC v. Douglas Ross Construction, Inc.*, Case No. 1:12-234516—seeks damages for injuries allegedly sustained as a result of defective design and construction of a "a 439-unit apartment project commonly known as 'The Redwoods.'" Dkt. No. 1-4, at ¶ 2; *see also* Dkt. No. 1, at ¶¶ 15–18. The underlying complaint alleges that DRC served as the general contractor on the project, and North Bay served as one of the subcontractors on the project. The underlying complaint also alleges that as a result of the work performed by DRC and North Bay, the project is materially defective and deficient in its design, formation, materials, workmanship and construction. Dkt. No. 1-4, at ¶¶ 18–20.

DRC subsequently filed a cross-complaint in the underlying action against several subcontractors, including North Bay. Dkt. No. 20, at 5; *see also* Dkt. No. 1-5. The DRC cross-complaint incorporates the allegations of the underlying complaint by reference and asserts the following causes of action against North Bay and the other subcontractors: breach of contract—duty to defend; breach of contract—duty to indemnify; breach of contract—duty to obtain insurance; negligence, contribution, express indemnity; implied indemnity; express warranty; implied warranty; declaratory relief—duty to defend; declaratory relief—duty to indemnify; and declaratory relief—duty to obtain insurance. *See* Dkt. No. 1-5.

DRC tendered both its defense in the underlying action, and North Bay's defense to the cross-complaint, to Atain based on its status as an additional insured under three insurance policies issued by Atain to North Bay. Dkt. No. 1, at ¶ 29. The three policies cover the policy periods from January 2, 2005 through January 2, 2008. *See* Dkt. No. 1, at ¶¶ 9, 10, 12; *see also* Dkt. Nos. 1-1, 1-2, 1-3. Each policy provided North Bay commercial general liability coverage, subject to the terms, conditions, limitations, exclusions, and endorsements contained therein. DRC, The Irvine Company, LLC, and Irvine Commercial Property Company are identified as additional insureds pursuant to certificates of insurance attached to the policies. *See* Dkt. No. 1, at ¶¶ 29, 34; *see also* Dkt. Nos. 1-6, 1-8.

Atain disclaimed coverage for the claims asserted against DRC and North Bay because it contends that there is no possibility of coverage for the underlying claim for two reasons. First, because the claims do not fall within the scope of the insuring agreements, and second, because

ORDER RE DEFAULT JUDGMENT
Case No. 14-CV-04056-RMW
EDB
- 2 -

several policy exclusions eliminate coverage for the claims asserted in the underlying action. Dkt. No. 20, at 11.

On September 5, 2014, following DRC's re-tender of its defense in the underlying action, Atain filed its complaint in this action against DRC and North Bay, seeking a declaratory judgment. Dkt. No. 1. On September 24, 2014 plaintiff served the summons and complaint upon DRC by personal service, pursuant to Fed. R. Civ. P. 5(b)(2)(B)(i), by leaving it with the person in charge of the office of DRC and its agent for service of process, and on October 2, 2014, served the summons and complaint upon North Bay's registered agent for service of process. Dkt. No. 21, at ¶¶ 7, 12; *see also* Dkt. Nos. 11–14. Under Fed. R. Civ. P. 12(a)(1), North Bay and DRC's responsive pleadings were due 21 days after service was completed. Here, DRC's response was due by October 15, 2014, and North Bay's was due by October 23, 2014. Neither defendant filed a response prior to that date.

On October 20, 2014 the clerk of court entered default against DRC, Dkt. No. 15, and on November 25, 2014 against North Bay. Dkt No. 19. Atain subsequently moved on December 4, 2014 for entry of default judgment. Dkt. No. 20. To date, North Bay has failed to appear or otherwise respond to the complaint. DRC filed a motion to set aside the default entered against it, *see* Dkt. No. 23, which the court denied on January 30, 2015.[1]

## II. Analysis

After entry of default, courts may, in their discretion, enter default judgment. *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In the Ninth Circuit, district courts weigh seven *Eitel* factors in making this determination: (1) the substantive merits of plaintiff's claim; (2) the sufficiency of the complaint; (3) the amount of money at stake in relation to the seriousness of defendants' conduct; (4) the possibility of prejudice to plaintiff if relief is denied; (5) the possibility of dispute as to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those

---

[1] DRC's motion was styled a motion to set aside default and/or default judgment and opposition to motion to default judgment. Dkt. No. 23. However, DRC's arguments were limited to setting aside the default, and did not address Atain's pending motion for default judgment.

ORDER RE DEFAULT JUDGMENT
Case No. 14-CV-04056-RMW
EDB
- 3 -

relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Here, at least five of the seven *Eitel* factors favor entry of default judgment.

### A. Substantive Merits and the Sufficiency of the Complaint

The first two *Eitel* factors, the substantive merits of plaintiff's claim and the sufficiency of the complaint, require that plaintiff's allegations "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). "[T]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

Plaintiff's two causes of action seek a declaration by the court that Atain has neither a duty to defend nor a duty to indemnify DRC and North Bay in the underlying action. *See* Dkt. No. 1. Under California law, an insurer has a broad duty to defend insured entities against claims that create a potential for indemnity. *See Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 295 (1993). The duty to defend is broader than the duty to indemnify, *see Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993), but it is not unlimited, *see Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 19 (1995). In determining whether there is a duty to defend, the Court must look to the complaint in the underlying litigation and "all facts known to the insurer from any source." *Montrose*, 6 Cal.4th at 300. The critical question, then, is whether the facts known to the insurer at the time it refused to defend the underlying lawsuit created any potential for coverage under the insurance policy. *See Gunderson v. Fire Ins. Exch.*, 37 Cal.App. 4th 1106, 1114 (1995). If there was no potential for coverage based on the underlying complaint and extrinsic facts made known to the insurer, then the insurer has no duty to defend. *See Montrose*, 6 Cal.4th at 295. Because the duty to defend is broader than the duty to indemnify, if, under the terms of the insurance policy, an insurer has no duty to defend, nor does it have a duty to indemnify the insured. These same principles apply to additional insureds, such as DRC. *See Monticello Ins. Co. v. Essex Ins. Co.*, 162 Cal.App. 4th 1376 (2008).

Here, Atain advances three principal reasons why it has no duty to defend or indemnify North Bay and DRC against the claims asserted in the underlying action: (1) the claims fall outside the scope of the Atain Policies' Insuring Agreements; (2) the "Total Residential" construction

exclusion applies to eliminate any potential for coverage; and (3) the "Cross Suits Liability" exclusion precludes coverage. *See* Dkt. No. 20, at 16–20. The court finds that at least two of the three reasons support the conclusion that Atain has no duty to defend or indemnify North Bay in the underlying action. Because the court finds that the underlying claims fall outside the scope of the Insuring Agreements and coverage is precluded by the "Total Residential" Coverage exclusion, the court does not address the "Cross Suits Liability" exclusion.

First, the claims asserted in the underlying action do not fall within the scope of the relevant Insuring Agreements. The Insuring Agreement provides for coverage scope in "Coverage A—Bodily Injury and Property Damage."[2] *See, e.g.*, Dkt. No. 1-1, at ECF p. 6. Coverage A includes "property damage" caused by an "occurrence" against a person or entity insured under the policies. *Id*. at ECF p. 6. As amended by Endorsement USF RBJ 039 10 03, "property damage" under Coverage A is limited to damage which "first manifests during the policy period." *Id*. at ECF p. 51.

The complaint in the underlying action alleges that the "property damage" at issue was discovered in or after October 2009. Dkt. No. 1-4, at ¶ 18. As discussed above, the policies issued by Atain to North Bay covered the periods from January 2, 2005 through January 2, 2008. *See* Dkt. No. 1, at ¶¶ 9, 10, 12. Accordingly, the "property damage" manifested after the expiration of the last Atain policy, and does not fall within the scope of the Coverage A Insuring Agreements. As Atain notes in its motion, "anti-*Montrose*" language which precludes coverage for "continuous injury" is acceptable under California law. *See, e.g., Westoil Terminals Co. v. Indus. Indem. Co.*, 110 Cal.App. 4th 139, 149 (2003) (regardless of the California Supreme Court's holding in *Montrose* that liability coverage is triggered under all policies in effect while continuous property damage develops, "if the policy expressly provides when coverage is 'triggered,' such language will be determinative."); *see also Martinez v. Lincoln Gen. Ins. Co.*, 417 Fed. Appx. 711, 712-713 (9th Cir. 2011) (insured bears burden of establishing property damage first manifested during the policy period if the inuring agreement includes a "first manifested" requirement).

---

[2] The insuring agreement also provides coverage for personal injuries in "Coverage B—Personal and Advertising Injury Liability," *see, e.g., id*. at ECF p. 10, but as none of the covered offenses listed in the policy is alleged in the underlying action, Coverage B is not implicated here.

ORDER RE DEFAULT JUDGMENT
Case No. 14-CV-04056-RMW
EDB
- 5 -

Second, Atain argues that the "Total Residential" Construction exclusion precludes coverage of the claims asserted in the underlying action. This exclusion precludes coverage for the defense or indemnification of claims for "property damage . . . arising from any work or operations performed . . . in connection with any condominium, townhome, single family dwelling and other residential or tract housing project." Dkt. No. 1-1, at ECF p. 56 (internal quotation marks omitted). The complaint in the underlying action alleges that the property at issue in the underlying action is a 439-unit residential apartment project. Dkt. No. 1-4, at ¶ 2. Under the plain terms of the Insuring Agreement, such a "residential . . . project" is expressly excluded from coverage. Dkt. No. 1-1, at ECF p. 56. As Atain points out, courts in this district have previously enforced this exclusion in the same Atain policies to preclude coverage for claims asserted against DRC and North Bay and another contractor for construction defect claims arising out of the construction of a similar apartment complex. *See Atain Specialty Ins. Co. v. N. Bay Waterproofing, Inc.*, Case No. 12-3339, 2013 WL 1819609, at *5 (N.D. Cal. Apr. 30, 2013) ("In the context of this case, the Court finds that the term 'residential' is not ambiguous, and it includes the buildings at issue here. The Subject Property, as an apartment building, falls within the dictionary definition, and the everyday meaning, of the term 'residential'— that is, 'serving or used as a residence', . . . 'connected with, entailing, or based on residence' . . . or 'used as a residence or by residents.'"). The court therefore finds that the "Total Residential" Construction exception precludes coverage for the claims asserted in the underlying action.

In conclusion, the court finds that plaintiff's complaint properly states a claim on which Atain may recover, and accordingly that the first two *Eitel* factors—the substantive merits of plaintiff's claim and the sufficiency of the complaint—weigh in favor of entry of default judgment.

**B. Amount of Money at Stake**

The third *Eitel* factor requires the court to consider the amount of money involved in relation to the seriousness of the defendant's conduct. *See Zazenski v. Danner*, Case No. 12-2344, 2013 WL 5513437, at *5 (N.D. Cal. Oct. 4, 2013). Here plaintiff is not seeking monetary damages against the defendants, but rather declaratory and injunctive relief. The court finds that this factor weighs neither for nor against granting default judgment.

### C. Possibility of Prejudice to the Plaintiff

The court recognizes the possibility that plaintiff will be prejudiced if default judgment is not entered against defendant. Denying judgment against a defendant who does not participate in litigation leaves the plaintiff with limited recourse for recovery, such as filing a time-intensive motion for summary judgment. *See United States v. Uptergrove*, Case No. 10-1598-RMW, 2012 WL 639482, at *4 (E.D. Cal. Feb. 24, 2012); *Joe Hand Promotions, Inc. v. Pete Be*, Case No. 11-1333, 2011 WL 5105375, at *2 (N.D. Cal. Oct. 26, 2011). Here, absent a default judgment, Atain will be left with few options to obtain relief, and would be denied the right to judicial resolution of the claims presented. Thus, the fourth *Eitel* factor weighs in favor of granting default judgment.

### D. Possibility of Dispute of Material Facts

The fifth *Eitel* factor involves the possibility of dispute as to any material facts in the case. While defendants might have disputed facts in this case had they appeared, the reality is defendants failed to do so and have waived their opportunity to dispute these facts. Courts take this into account and hold that when the Clerk has entered default, all well-pleaded factual allegations set forth in the complaint will be taken as true, except for those allegations pertaining to damages. *See Televideo*, 826 F.2d at 917–18. *See also PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).

### E. Excusable Neglect

The sixth *Eitel* factor considers whether defendants' failure to appear was due to excusable neglect. Where the defendant has been properly served or the plaintiff otherwise demonstrates the defendant was clearly aware of the pending litigation, excusable neglect is remote and this factor weighs in favor of default judgment. *See Zazenski*, 2013 WL 5513437, at *5.

Here, Atain served North Bay and DRC, and North Bay never appeared in court. Dkt. No. 21, at ¶ 7; *see also* Dkt. Nos. 12, 14. For North Bay, the possibility of excusable neglect is therefore remote and this factor weighs in favor of default judgment. DRC did appear in the case, and provided reasons explaining its neglect. *See* Dkt. No. 23. Accordingly, as to DRC, this factor weighs against entry of default judgment. However, five of the remaining factors weighs in favor of

ORDER RE DEFAULT JUDGMENT
Case No. 14-CV-04056-RMW
EDB
- 7 -

granting plaintiff's motion, and the fact that DRC's excuse may have been excusable does not disturb the court's conclusion that default judgment should be granted.

### F. Policy for Deciding on the Merits

The strong preference of the Federal Rules of Civil Procedure to have courts render decisions on the merits is problematic where defendants fail to appear or respond in any way to the plaintiff's complaint, such as in this case. While the Federal Rules favor decisions on the merits, this preference standing alone is not dispositive. *See Zazenski*, 2013 WL 5513437, at *5. Such a decision is not possible where the defendants have refused to participate in the proceedings. *See PepsiCo*, Inc., 238 F.Supp.2d 1172, 1177 (2002). Thus, the preference to decide cases on the merits does not preclude granting default judgment.

### G. Relief

In its motion for default judgment, plaintiff asks this court to declare that Atain has no duty to defend or indemnify DRC and North Bay in the underlying action. Dkt. No. 20. This request is within the scope of what is demanded in the complaint, *see* Dkt. No. 1, at 19–20, and the court finds it reasonable in light of the circumstances of the case. Accordingly, the court grants plaintiff's request for declaratory relief.

## III. Order

For the foregoing reasons, plaintiff's motion for default judgment is granted. The clerk of court is directed to enter judgment as to defendants North Bay and DRC, and to close the case file.

Dated: January 30, 2015

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge